[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

-----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 7, 2005
THOMAS K. KAHN
CLERK

No. 04-14591
Non-Argument Calendar
-----------------------------------------

Agency No. A76-911-091

RIGERS A. SHASHAJ,

                                        Petitioner,

                    versus

U.S. ATTORNEY GENERAL,

                                        Respondent.


-------------------------------------------------------------------
Petition for Review of a Decision of the
Board of Immigration Appeals
-------------------------------------------------------------------
(October 7, 2005)

Before EDMONDSON, Chief Judge, CARNES and MARCUS, Circuit Judges.


PER CURIAM:

Rigers A. Shashaj, a native and citizen of Albania, petitions for review of the final order of the Board of Immigration Appeals (BIA), which affirmed the immigration judge's denial of asylum, denial of withholding of removal, and denial of relief under the United Nations Convention Against Torture (CAT), based on an adverse credibility determination. Removal proceedings commenced after 1 April 1997; the permanent provisions of the Immigration and Nationality Act, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996), govern this petition. We deny the petition.[1]

Shashaj argues that he is entitled to asylum because substantial evidence does not support the IJ's adverse credibility determination. Shashaj challenges each of the inconsistencies that the IJ mentioned. He contends that many of the inconsistencies are not supported by the record, that the IJ gave undue weight to minor inconsistencies, that the IJ failed to credit his explanations for the inconsistencies, and that the IJ failed to give appropriate consideration to his detailed and consistent account of the circumstances surrounding his persecution and the documents he submitted to corroborate his testimony.

---

[1]Shashaj does not challenge the IJ's determinations that he is not entitled to withholding of removal or CAT relief. These claims are abandoned and we need not consider them. See Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1286 n.3 (11th Cir. 2003).

We review the IJ's findings of fact under the "substantial evidence" test: we must affirm the IJ's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (citation omitted).[2] "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). We also review the IJ's credibility determinations under the "substantial evidence" test. D-Muhumed v. U.S. Attorney Gen., 388 F.3d 814, 818 (11th Cir. 2004). And on credibility determinations, we may not substitute our judgment for that of the IJ. Id.

An alien may obtain asylum if he is a "refugee": a person unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of," among other things, political opinion. 8 U.S.C. §§ 1101(a)(42)(A), 1158(a)(1), (b)(1). The asylum applicant bears the burden of proving statutory "refugee" status with specific and credible evidence. Al Najjar, 257 F.3d at 1284, 1287. But an adverse credibility determination alone may be

---

[2] The BIA affirmed the IJ's decision without opinion: we review the IJ's decision as the final agency determination. See Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1285 n.2 (11th Cir. 2005).

3

sufficient to support the denial of asylum relief.  See Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1287 (11th Cir. 2005).

Here, substantial evidence supports the IJ's adverse credibility determination.  Shashaj's asylum claims rest on his alleged involvement with the opposition Democratic Party (DP) in Albania throughout the 1990s.  Shashaj claimed that he participated in protests against the ruling Socialist Party and worked as an election observer, but that he was arrested several times, was threatened, and, ultimately, was beaten severely.  Some minor inconsistencies exist between Shashaj's asylum application, his initial asylum hearing testimony, and the testimony of him and his mother, Dhurata, at the removal hearing.  But several inconsistencies are major and cast doubt on the basis of Shashaj's asylum claim. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (stating that adverse credibility finding must go to the "heart" of the asylum claim and should not be based on minor inconsistencies).

First, Shashaj testified at the removal hearing that, in July 1998, he and his demonstration group were taken to a police station for interrogation, where he was detained for five hours, beaten, and kicked.  But Shashaj failed to mention this incident either in his asylum application or at the asylum hearing.  Also, his

4

testimony about the July 1998 incident differed from that of Dhurata, who stated that Shashaj was not harmed physically but only pressured psychologically.

Second, Shashaj testified that he was taken from his house on 14 November 1998 by three armed plain-clothes "members of the law" who blindfolded him but did not handcuff him. Dhurata, however, testified that the three men were dressed in blue uniforms, that one of them handcuffed Shashaj, and that three more officers waited outside.[3]

And Shashaj failed to provide a consistent account about what happened after the police officers drove him to mountains 30 to 45 minutes away and seriously beat him. In his asylum application, Shashaj stated that a passerby took him home and that he met with DP representatives the next day.[4] During the asylum interview, Shashaj stated that the passerby took him to a hospital where he was treated for two days. At the removal hearing, he testified that he stayed at the hospital overnight, was released the next afternoon, and did not meet with DP representatives until 18 November. And Dhurata testified that Shashaj was

---

[3] We note that Shashaj's testimony that three men came to his house is not necessarily inconsistent with Dhurata's testimony that three men came to their house and that three more men waited outside. But we do note that Shashaj failed to mention the existence of the additional officers.

[4] Shashaj submitted his asylum application in February 1999. But in July 2000, on the day of his initial removal hearing, Shashaj attempted to make a handwritten edit to his asylum application stating that two days later, after release from the hospital, he met with DP members.

released from the hospital a few hours after being admitted, but only met with friends and relatives during his one-week recovery at home.

An inconsistency also exists between Shashaj's testimony about the DP's involvement in the 1998 Albanian constitutional referendum, which occurred in November 1998, and the 1999 U.S. State Department Country Report, which stated that, during a 10-month boycott of the Albanian Parliament which stopped in July 1999, the DP refused to participate in "virtually all government functions at the national level."  Although Shashaj produced newspaper articles indicating that some DP members were at polling locations in November 1998, this evidence does not compel a conclusion that the IJ improperly relied on the State Department's report as one of the reasons supporting her adverse credibility determination.  See Reyes-Sanchez v. U.S. Attorney Gen., 369 F.3d 1239, 1243 (11th Cir. 2004) (BIA entitled to "rely heavily" on State Department reports); 8 C.F.R. § 208.12 (asylum officer may rely on State Department materials in deciding asylum application).

Substantial evidence also supports the IJ's determination that Shashaj failed to produce sufficient corroborating evidence to meet his burden of proof to establish his eligibility for asylum.  See Forgue, 401 F.3d at 1287 (stating that IJ must consider all evidence produced by applicant).  For example, although Shashaj testified that his right shoulder was injured during the November 1998

6

beating, the medical report indicated that his left shoulder was injured.  And Shashaj testified that he was treated by Hospital #5, but the medical report stated that he was checked by Polyclinic #8.  Also, Shashaj testified that, during a political demonstration in 1991, he was arrested and taken to Police Station #1; he stated he was not prosecuted because he only was 14 years old.  But Shashaj presented a document from Police Station #3 indicating that he was "condemned with criminal prosecution."  Further, a forensic examiner from the Department of Justice concluded that it was not possible to authenticate some of the documents submitted for analysis, including Shashaj's DP membership cards and a certificate from the DP Secretary.

In sum, the IJ provided cogent reasons for her credibility determination: and these reasons are supported by substantial record evidence.  See D-Muhumed, 388 F.3d at 819 (citations omitted).  We are not compelled to reverse the IJ's decision: we uphold the denial of asylum relief.

PETITION DENIED.

7